Robert W. Ottinger (SBN 156825)
**THE OTTINGER FIRM, P.C.**
535 Mission Street
San Francisco, CA 94105
Tel: 415-262-0096
Fax: 212-571-0505
robert@ottingerlaw.com

*Attorneys for Plaintiff*
JASON KISS

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON KISS, | Case No.: |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| ASPIRIANT, LLC, | |
| Defendant. | |

Plaintiff, Jason Kiss, by and through his attorneys, The Ottinger Firm, P.C., complaining of Defendant, Aspiriant, LLC, alleges as follows:

## I.  INTRODUCTION

1. Plaintiff Jason Kiss ("Plaintiff") brings this action against his former employer, Aspiriant, LLC ("Defendant" or "Aspiriant"), for declaratory and injunctive relief arising out of and relating to Defendant's unlawful attempt to enforce overbroad and unenforceable restrictive covenants in violation of California Business & Professional Code ("Cal. Bus. & Prof. Code") §§ 16600 et seq, as amended by Senate Bill 699 and Assembly Bill No. 1076.

## II.  JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction under 28 U.S.C. § 1332.

3. Complete diversity of citizenship exists because Plaintiff is now a resident of Michigan and Defendant is incorporated in Delaware, with its headquarters in Los Angeles, California, with offices in San Francisco, San Diego, as well as Orange County and Silicon Valley. The amount in controversy exceeds $75,000.

4. Venue is proper in the Central District of California under 28 U.S.C. § 1391(b)(1) as Defendant is headquartered in the Central District of California.

5. This Court has authority to award the requested declaratory relief under 28 U.S.C. §§ 2201 and 2202, Federal Rule of Civil Procedure 57, and the general legal and equitable powers of the Court.

### III. PARTIES

6. Plaintiff is currently a resident of Michigan. From 2014 through 2021, Plaintiff was a resident of California working for a California based company and connecting to California based offices where his supervisors were headquartered in California at that time.

7. Defendant is a wealth management firm headquartered in Los Angeles, California, at 11100 Santa Monica Blvd, Suite 600, 90025, and incorporated in the state of Delaware. At all times relevant hereto, Defendant maintained offices in Los Angeles, San Francisco, Orange County, San Diego, and Silicon Valley.

8. At all relevant times, Defendant had and still has at least fifty employees working within this district, and this is the district in a substantial portion of the events at issue took place.

9. At all relevant times, Defendant met the definition of "employer" under applicable statutes, laws, and regulations.

### IV. FACTUAL ALLEGATIONS

#### Plaintiff's Employment with Aspiriant

10. In June 2014, Plaintiff began working for Aspiriant as a Director of Wealth Management, out of Aspiriant's San Francisco office.

11. For the duration of Plaintiff's tenure, Plaintiff reported to various supervisors

1 | all based in Aspiriant's San Francisco office.

2 | 12. Upon joining Aspiriant, Plaintiff brought a few former clients from his old firm to join him at Aspiriant.

4 | 13. In 2017, Aspiriant offered Plaintiff the opportunity to become Partner. As a condition of becoming a partner, Aspiriant required employees to buy interest in the company.

7 | 14. On April 28, 2017, Plaintiff purchased interest in Aspiriant, representing a mere 0.5% interest, a minimal, non-controlling stake in Aspiriant Holdings LLC, the holding company through which new partners buy into Aspiriant.

10 | 15. In 2021, during the Covid-19 pandemic, Plaintiff and his family planned to leave San Francisco and move to Michigan. Plaintiff informed Aspiriant, which agreed to let him continue to work for the Company remotely from Michigan.

13 | 16. Aspiriant never set up nor advertised as having a Michigan-based office.

14 | 17. Additionally, Plaintiff's ADV filing listed his Aspiriant work address as San Francisco.

16 | 18. Despite Plaintiff's move to Michigan, he maintained a constant presence in the California office. Plaintiff traveled to California approximately once a month and worked from the San Francisco office for a period of approximately four days during each trip. In fact, some of Plaintiff's younger colleagues commented that they saw him in the office more than some partners who were local.

21 | 19. Upon his move to Michigan, Plaintiff continued to report to Mr. Gookin and Mr. Hamilton in the San Francisco office and met with them regularly.

23 | 20. Plaintiff also continued to consistently service California-based clients, along with more junior colleagues, most of whom were based out of the San Francisco office.

25 | 21. Plaintiff developed positive and friendly relationships with many of his clients.

27 | 22. On October 1, 2025, Plaintiff announced his resignation from his position at Aspiriant.

23. Upon his exit from the Company, Plaintiff's previous shares, amounting to 0.5%, will be sold back to the Company. Upon purchasing Plaintiff's shares, the Company may (a) pay out Plaintiff for all his shares on April 30, 2026, at a formula-determined price based on Aspiriant's December 31, 2025, financial results, (b) pay Plaintiff 60% of the value of his shares on April 30, 2026, and pay the remaining amount in two 20% installments on the 12- and 24-month anniversaries thereafter, at a formula-determined price based on Aspiriant's end-of-year financial results, or (c) to defer Plaintiff's payments in favor of other retiring partners, eventually to pay out Plaintiff at a formula-determined price based on Aspiriant's yearly financial results. There is no separately negotiated or separate goodwill valuation of the purchase price in any scenario.

**Aspiriant Seeks to Enforce Invalid Restrictive Covenants**

24. On December 12, 2025, counsel for Aspiriant sent Mr. Kiss's counsel a Demand for Arbitration and Statement of Claim (the "Demand").

25. In the Demand, Aspiriant alleged that Mr. Kiss violated multiple restrictive covenants.

26. First, Aspiriant alleged Mr. Kiss violated two restrictive covenant clauses contained in an NDA, entered into on October 17, 2024 (the "NDA"), which state in relevant parts:

> 6. **Non-Solicitation of Clients**. I covenant and agree that I shall not, without the written consent of Employer, either directly or indirectly, on my own behalf or in the service or on behalf of any other Person, use Trade Secrets to contact, solicit, or assist in the soliciting of, contact, or call upon, or otherwise attempt to divert to a Competing Business any (a) client to whom Employer provided services at any time within the twelve (12) month period prior to the last day of my employment or (b) any prospective client that Employer sought to sell services to at any time within the twelve (12) months period prior to the last day of my employment, for the purpose of providing investment advice, wealth management and/or family office services as conducted or proposed to be conducted by Employer or interfering with or

inducing the termination or reduction of services provided by Employer.

7. **Non-solicitation of Employees, Contractors and/or Agents**. I covenant and agree that I shall not, without the written consent of Employer, either directly or indirectly, on my own behalf or in the service or on behalf of any other Person, use Trade Secrets (which for this purpose also includes employee performance ratings and other personnel records reflecting employees' special skills, talents, and terms of compensation) to disrupt, damage, impair or interfere with any Aspiriant Entity by raiding its work staff, nor shall I directly or indirectly or by action in concert with others, induce or influence (or seek to induce or influence), solicit or assist in soliciting any person who is engaged (as an employee, agent, independent contractor, or otherwise) by any Aspiriant Entity to terminate his or her Employment or engagement or otherwise leave the employ of any Aspiriant Entity or to join any firm or business with which I am or may become affiliated."

27. Second, Aspiriant alleged that Mr. Kiss violated three restrictive covenant clauses contained in an unsigned Buy-Sell Agreement (the "Buy-Sell Agreement"), which state in relevant parts:

2. **Non-solicitation of Clients**. I covenant and agree that I shall not, during the Non-solicitation Period, without the written consent of Company, either directly or indirectly, on my own behalf or in the service or on behalf of any other Person, contact, solicit, or assist in the soliciting of, contact, or call upon, or otherwise attempt to divert to a Competing Business any (a) client to whom Company provided services at any time within the twelve (12) month period prior to the date the right of purchase arises pursuant to Section 5 of this Agreement, or (b) any 7 63049381.5 prospective client that Company sought to sell services to at any time within the twelve (12) months period prior to the date the right of purchase arises pursuant to Section 5 of this Agreement, for the purpose of providing investment advice, wealth management and/or family office services as conducted or proposed to be conducted by Company or interfering with or inducing the termination or reduction of services provided by

Company.

3. **Non-solicitation of Employees, Contractors and/or Agents**. During the Non-solicitation Period, without the prior written consent of Company, I shall not disrupt, damage, impair or interfere with any Aspiriant Entity by raiding its work staff, nor shall I directly or indirectly or by action in concert with others, induce or influence (or seek to induce or influence), solicit or assist in soliciting any person who is engaged (as an employee, agent, independent contractor, or otherwise) by any Aspiriant Entity to terminate his or her employment or engagement or otherwise leave the employ of any Aspiriant Entity or to join any firm or business with which I may be or become affiliated.

4. **Post-Sale Restriction re: Clients**. For a period of eighteen (18) months following the date the right of purchase arises pursuant to Section 5 of this Agreement, I will not, directly or indirectly, provide services, in-house or otherwise, (a) to any client of an Aspiriant Entity to which I provided services at any time within the twelve (12) month period prior to the date the right of purchase arises pursuant to Section 5 of this Agreement, or (b) to any prospective client of an Aspiriant Entity to which I participated in a proposal to provide services to at any time within the twelve (12) month period prior to the date the right of purchase arises pursuant to Section 5 of this Agreement; provided, however, that I shall be permitted to serve as a Trustee or in a similar capacity for a client following the date the right of purchase arises pursuant to Section 5 of this Agreement, so long as I am not separately compensated (other than for service as a fiduciary) for wealth management or investment advice.

28. The Buy-Sell Agreement defines the "Non-Solicitation Period" as "the period during [employee's] employment with the Company and the period beginning on the date the right of the purchase arises pursuant to Section 5 […] and expiring (18) months thereafter.

29. Aspiriant's Demand pursues four causes of action: (1) breach of the client

non-solicitation covenant of the NDA; (2) breach of the employee non-solicitation covenant of the NDA; (3) breach of the client non-solicitation covenant in the buy-sell agreement; and (4) breach of the employee non-solicitation covenant in the buy-sell agreement.

30. Defendant falsely alleges that Plaintiff solicited multiple clients from Aspiriant to his new place of employment in order to prevent clients, some of whom are California-residents, from freely moving their business from Aspiriant to a different wealth management firm.

31. Notably, none of the allegedly-solicited clients Defendant refers to are Michigan residents.

32. In sum, Defendant seeks to force Plaintiff to arbitrate the enforceability of clearly illegal contract clauses in Michigan, a state with no interest in the proper application of the law. Cal. Business & Professions Code, § 16600.5.

33. Accordingly, Plaintiff seeks relief to prevent Defendant from enforcing void and unenforceable restrictive covenants.

## FIRST CAUSE OF ACTION

*Violation of California's Business and Professions Code § 16600, as amended by Senate Bill 699*

(Cal. Bus. & Prof. Code §§ 16600.5(a)-(e))

34. Plaintiff re-alleges and incorporates all preceding paragraphs of this complaint by reference as if fully set forth herein.

35. Cal. Bus. & Profs. Code § 16600 provides that, subject to certain exceptions, "every contact by which anyone is restrained from engaging in a lawful profession, trade,

or business of any kind is to that extent void."

36. Any contract that is void under this chapter is unenforceable regardless of where and when the contract was signed. Cal Bus. & Profs. Code § 16600.5(a).

37. An employer or former employer shall not attempt to enforce a contract that is void under this chapter regardless of where the contract was signed *and the employment was maintained outside of California*. Cal Bus. & Profs. Code § 16600.5(b).

38. At all times relevant hereto, Plaintiff was employed by Defendant, a company operated and headquartered in the state of California. Plaintiff worked for Defendant in the state of California from 2014 through 2021. From 2021 through 2025, Plaintiff worked remotely, for Defendant, from the state of Michigan.

39. Plaintiff is not subject to a statutory exception under Cal. Bus. & Profs. Code § 16601, as Plaintiff never owned a substantial interest in the Company and there was no separately negotiated goodwill valuation of Plaintiff's sale of his interest.

40. Defendant has pursued arbitration to enforce void and unenforceable clauses, namely the Non-Solicitation of Clients clause and Non-solicitation of Employees, Contractors, and/or Agents clause of the aforementioned NDA, as well as the non-solicitation of Clients clause, non-solicitation of employees, contractors and/or agents clause, and the post-sale restriction of clients clause contained in the aforementioned Buy-Sell Agreement.

41. Defendant has committed a civil violation by attempting to enforce void clauses of a contract under Cal. Bus. & Prof. Code §16600 in attempting to restrain Plaintiff from engaging in his lawful profession, trade, or business. Cal. Bus. & Prof. Code § 16000.5(d).

42. Plaintiff seeks a declaration from this Court that the restrictive covenants are unenforceable, void, or otherwise inapplicable to Plaintiff.

43. Plaintiff seeks an injunction ordering Defendant refrain from pursuing baseless and harassing arbitration of this matter.

44. Plaintiff seeks compensatory damages, civil penalties, attorneys fees, and

costs.

## SECOND CAUSE OFACTION

*Violation of California's Business and Professions Code § 16600, as amended by Assembly Bill No. 1076*

(Cal. Bus. & Prof. Code §§ 16600.1(a)-(c))

45. Plaintiff re-alleges and incorporates all preceding paragraphs by reference as if fully set forth herein.

46. Cal. Bus. & Profs. Code § 16600(a) provides that, subject to certain exceptions, "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

47. Cal. Bus. & Profs. Code § 16600(b)(1) provides that "[t]his section shall be read broadly, in accordance with *Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937, to void the application of any noncompete agreement in an employment context, or any noncompete clause in an employment contract, no matter how narrowly tailored, that does not satisfy an exception in this chapter.

48. Cal. Bus. & Profs. Code § 16600.1(b)(1) provides, "[f]or current employees, and for former employees who were employed after January 1, 2022, whose contracts include a noncompete clause, or who were required to enter a noncompete agreement, that does not satisfy an exception to this chapter, the employer shall, by February 14, 2024, notify the employee that the noncompete clause or noncompete agreement is void.

49. Construed broadly under Cal. Bus & Prof. Code § 16600, Defendant failed to notify Plaintiff that the restrictive covenants contained in the NDA (the Non-Solicitation of Clients clause and Non-solicitation of Employees, Contractors, and/or Agents clause) as well as the restrictive covenants contained in the Buy-Sell Agreement (the non-solicitation of Clients clause, non-solicitation of employees, contractors and/or agents clause, and the post-sale restriction of clients clause) are void.

50. Not only did Defendant fail to notify Plaintiff of the invalidity of those clauses, but Defendant now seeks to initiate an arbitration clause to enforce them.

51. As such, Defendant has committed a violation of Cal. Bus. & Prof. Code § 16600.1, constituting an act of unfair competition within the meaning of Cal. Bus. & Prof. Code § 17206, warranting civil penalties.

52. Plaintiff seeks a civil penalties against Defendant for violating Cal. Bus. Prof. Code § 16600.1.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, prays for judgment against Defendant as follows:

A. A declaration that the restrictive covenants are unenforceable, void, or otherwise inapplicable to Plaintiff;

B. An injunction ordering Defendant cease pursuing arbitration in this matter;

C. An award for actual and compensatory damages in an amount to be proven at trial;

D. Pre-judgment and post-judgment interest, as provided by law;

E. Attorneys' fees and costs under applicable law, including expert fees and costs; and

F. Such additional and further relief as this forum may deem just and proper.

ADDITIONALLY, Plaintiff demands a trial of this matter by jury. The amount demanded exceeds $75,000.00.

Dated: December 22, 2025                    **THE OTTINGER FIRM, P.C.**

                                            _____
                                            Robert Ottinger
                                            Attorney for Plaintiff